Filed 6/21/22  Cirt v. Superior Court CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JACOB AARON CIRT,<br><br>     Petitioner,<br><br>          v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>     Respondent;<br><br>THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>     Real Party in Interest. | G060846<br><br>(Super. Ct. No. 21NF2068)<br><br>O P I N I O N |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Jeff Ferguson, Judge.  Petition granted.

Mark W. Fredrick for petitioner.

Todd Spitzer, District Attorney and Brian Fitzpatrick, Assistant District Attorney for Real Party in Interest.

*　　　*　　　*

THE COURT:*

Petitioner Jacob Aaron Cirt made a peremptory challenge to respondent court pursuant section 170.6 of the Code of Civil Procedure.[1]  Cirt contends respondent court improperly denied the preemptory challenge as untimely.  We agree and the petition is granted.

FACTS

Jacob Aaron Cirt is charged in a felony complaint with possession of methamphetamine and sale or transportation of ecstasy.  On July 2, 2021, Cirt was present in court when he was arraigned on the complaint in Department N3 before Judge Thomas J. Lo.  According to the docket, Cirt was remanded to the custody of the Sheriff and bail set in the amount of $100,000.  Cirt was ordered to be in court for the pretrial hearing set for July 23, 2021, and the preliminary hearing on July 29, 2021, both scheduled to take place in Department N12.  Four days after Cirt was arraigned, a docket entry indicates a bail bond was posted and Cirt was released from custody.

The week before Cirt was scheduled to be back in court, the docket entry on July 14, 2021, states that Cirt's case was transferred from Department N12 back to the calendar court in Department N3.  On July 23, 2021, Judge Lo presided over Cirt's pretrial hearing in Department N3.  It appears that Cirt was not present when the court called the case and a bench warrant was issued, but recalled when Cirt appeared later that

_____

*  Before O'Leary, P. J., Goethals, J., and Marks, J.**
**  Judge of the Orange Super. Ct., assigned by the Chief Justice pursuant to article VI, section 6, of the California Constitution.
[1]  All further references are to the Code of Civil Procedure unless otherwise noted.

2

morning and the bail bond that had been forfeited was reinstated. The docket entry also states, "Court places a PC1275.1 hold," presumably to determine the legality of the source of consideration posted for Cirt's bail.

New court dates were set and the pretrial and the Penal Code section 1275.1 hearing were scheduled to take place in Department N12 on September 16, 2021. However, before the date of the hearing, the court placed the matter on calendar for a pretrial mandatory settlement conference on August 13, 2021, in Department C44. On August 13th, Cirt appeared in Department C44 before Judge Andre Manssourian. According to the docket, the pretrial and hearing that had been set for September 16th in Department N12, were transferred back to the calendar court in Department N3. But instead of appearing before Judge Lo again, Judge Ferguson was sitting in Department N3 for the pretrial and the Penal Code section 1275.1 hearing. After the parties made their appearances for the record, co-counsel for the co-defendant asked the court to vacate the date for the preliminary hearing and to set a new pretrial date. Before addressing co-counsel's request, the court said, "Before we do that, it's set for 1275.1 hearing for Mr. Jason [*sic*] Cirt. Do you have the documentation, sir?" Thereafter, the following exchange took place:

"[COUNSEL]: I do have documentation with me, Your Honor.
THE COURT: Do you want to submit it to the court so I can take a look at it? [¶] Do you also have witnesses here?
[COUNSEL]: I don't. I have witnesses unavailable this morning, Your Honor.
THE COURT: Is the bail bondsman here?
[COUNSEL]: No, Your Honor.
THE COURT: Well, unfortunately, I need the bail bondsman here in order to have documentation as to what that person believed the source of the bail bond was.
[COUNSEL]: This is a matter from Department 3, [*sic*], Your Honor. I was hoping –
THE COURT: It's not anymore. It's in Department 3 here. We are 3.

3

[COUNSEL]:  I'm sorry.  From Department 12.

THE COURT:  It's not going to be in Department 12.  It's here for 1275.1 hearing today.  [¶]  I at this time lack confidence that you are going to be able to sustain your burden of evidence today; is that correct?

[COUNSEL]:  Yes.

THE COURT:  All right.  Mr. Cirt's – Mr. Jacob Cirt's bond is Exonerated.  He's remanded into custody.  Bail is going to be set in the amount of –

[COUNSEL]:  You're [*sic*] Honor, excuse me –

THE COURT:  We'll have a sidebar in a minute, [counsel].

[COUNSEL]:  I'm sorry?

THE COURT:  So bail is going to be set on – let's see –21NF2068 in the amount of $100,000.

[COUNSEL]:  Your Honor, excuse me.  I think I misunderstood the court's question.

THE COURT:  On 20NF1547 bail is going to be set at $25,000.  On 20NF0014 bail will be set at $20,000.  He is remanded into custody at this time.

[COUNSEL]:  Your Honor, I will be able to have a witness here and a bondsman here at 1:30.  I do have a preliminary examination upstairs in Department 4, as the court is aware.

THE COURT:  We will set another 1275 date for you.

[COUNSEL]:  I will be filing a 170.6 affidavit.

THE COURT:  Denied.

[COUNSEL]:  Excuse me?

THE COURT:  It's denied.  You just appeared here.  I just called the case.

[COUNSEL]:  No, Your Honor.  The court has –

THE COURT:  It's untimely.  Take up a writ.

[COUNSEL]:  It's not untimely, Your Honor.  The court hasn't heard anything significant.

THE COURT:  I just did.  I just heard some proceedings.

[COUNSEL]:  That's not a rule for a 170.6.

THE COURT:  Why don't you wait, and after we're done on the calendar, then we'll revisit this and have a conversation about it.  So just stand by, we'll put it on second call."

After a break in the proceedings, the case was recalled and the following exchange took place:

4

[COUNSEL]: I did file a 170.6 affidavit.

THE COURT: Yeah. It was denied. It's untimely. I started the hearing. I began to ask you specific questions about evidence, evidentiary questions, whether you had witnesses available, and so forth; so I began the process. It's untimely.

[COUNSEL]: No, Your Honor. The court asked me –

THE COURT: I'm going to – I'm going to let you make a record, but it's denied as untimely, but go ahead.

[COUNSEL]: Okay. So the court asked me if I had the documents with me. I indicated that I did. I walked towards my briefcase. The court continued to speak and ask the question. I'm not sure what it was. I did indicate to the court I had a witness unavailable but later told the court she could be here at 1:40. The court heard no contested issue of fact in this matter, which is what 170.62 [*sic*] discusses. That's when the court –

THE COURT: I disagree with you. My question to you is 'Do you want to go forward with the hearing? Do you want to go forward at 1:30?' That's fine.

[COUNSEL]: I do want to go forward with the hearing at 1:30, Your Honor –

THE COURT: All right.

[COUNSEL]: – in front of a different judge because I filed a valid 170.6.

THE COURT: Well, it's denied. It's untimely.

[COUNSEL]: Is it the court's position that you heard a contested issue of fact in this case? Because all I did –

THE COURT: It's that I started a hearing. So –

[COUNSEL]: All I did was ask to continue the hearing, and the court denied it. That's what happened."

During the afternoon session respondent court reinstated petitioner's bond and he was released from custody. Petitioner filed a petition for writ of mandate in this court, (G060726) but because the preliminary hearing had not yet taken place and petitioner had not yet been arraigned on an information, the petition was transferred to the superior court to be considered on the merits. (*People v. Superior Court* (*Jimenez*) (2002) 28 Cal. 4th 798, 803.)

The superior court denied the petition for writ of mandate primarily for two reasons. First, the superior court's order states that it was not clear whether petitioner

5

"actually made a proper challenge" because although counsel announced his intention to file a 170.6 challenge, no motion appeared in the court record, nor was a copy of the motion provided to the court as an exhibit to the writ petition, and counsel's statement that he "will be filing" a peremptory challenge did not qualify as a valid oral motion under section 170.6. The court explained further and said that any oral motion made by counsel was deficient because it was unaccompanied "by an oral statement under oath that the judge was prejudiced."

The superior court's second reason for denying the petition for writ of mandate was because even if petitioner did in fact make a proper section 170.6 motion, it was untimely because "Counsel did not immediately make the challenge upon reporting to the assigned courtroom or prior to the commencement of the hearing" and also because "The court went into the substance of the case in some manner and acted on it . . . [and it] appears that the court did go into a disputed issue of fact and/or law because it made a decision on bail after counsel made the representation that he could not meet his burden of proof at that time."

Petitioner filed a second petition for writ of mandate in this court. As petitioner explains, September 16th was his first appearance before respondent court and he informed the court at the first opportunity that a peremptory challenge would be filed. Petitioner also states that before counsel was interrupted, he informed the court that a request to continue the matter would be filed as well. Petitioner states that even though he was remanded into custody and the court set bail, no substantive issues involving a determination of a contested fact relating to the merits were discussed or ruled on, and any questions directed to counsel were understood to be for the purpose of court assignment and were not related to substantive issues of fact.

Citing *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 180, this court invited informal opposition from the People and the Office of General Counsel on behalf of the superior court. The District Attorney's Office filed a letter stating it

6

declined to file opposition, but "anticipate[d] the Office of General Counsel of the Orange County Superior Court will file an informal response." The Office of General Counsel of the Orange County Superior Court also failed to file opposition at the court's invitation.

## DISCUSSION

Section 170.6 states that "[a] judge, court commissioner, or referee of a superior court of the State of California shall not try a civil or criminal action or special proceeding of any kind or character nor hear any matter therein that involves a contested issue of law or fact when it is established as provided in this section that the judge or court commissioner is prejudiced against a party or attorney or the interest of a party or attorney appearing in the action or proceeding." (§ 170.6, subd. (a)(1).)

It is frequently explained that "'[S]ection 170.6 is to be liberally construed in favor of allowing a peremptory challenge, and a challenge should be denied only if the statute absolutely forbids it.'" (*Maas v. Superior Court* (2016) 1 Cal. 5th 962, 973.)

Courts of Appeal reviewing section 170.6 orders frequently describe the appellate standard of review for such orders as abuse of discretion, (*Grant v. Superior Court* (2001) 90 Cal.App. 4th 518) however, because the trial court has no discretion to deny a section 170.6 motion filed in compliance with the statute's procedures (*Maas v. Superior Court*, *supra*, 1 Cal.5th at p. 972) it is "'appropriate to review a decision granting or denying a peremptory challenge under section 170.6 as an error of law.'" (*Bontilao v. Superior Court* (2019) 37 Cal. App. 5th 980, 987-88.) Under either standard petitioner is entitled to relief.

Although there is some question whether petitioner made a proper oral 170.6 motion, respondent court waived any defects in the motion when it considered and ruled on the motion and denied the peremptory challenge as untimely, not defective.

7

Subdivision (2) of section 170.6 states in part that counsel "may establish this prejudice by an oral or written motion without prior notice supported by affidavit or declaration under penalty of perjury, or an oral statement under oath, that the judge, court commissioner, or referee before whom the action or proceeding is pending, or to whom it is assigned, is prejudiced against a party or attorney, or the interest of the party or attorney, so that the party or attorney cannot, or believes that he or she cannot, have a fair and impartial trial or hearing before the judge, court commissioner, or referee." (§ 170.6, subd. (2).)

Although counsel's oral statement that he intended to file a 170.6 affidavit suggests that it had not yet occurred, it is apparent from the reporter's transcript that respondent court construed and considered counsel's oral statement as a peremptory challenge to the court. Respondent court could have asked counsel to clarify whether he was actually making the motion, or the court could have denied the motion as defective, but instead, respondent court elected to rule on the motion and deemed the oral peremptory challenge untimely.

The superior court suggests counsel's oral attempt at a peremptory challenge was insufficient because it was not an oral statement made under oath. But clearly counsel cannot administer an oath to himself. If the court understood that counsel was making a 170.6 motion, as the court apparently did, and the court required full compliance with the statute, then the court should have administered an oath, or directed the court clerk to administer an oath in compliance with subdivision (2) of section 170.6. (Code of Civ. Proc., § 2093 (a).)

When the court recalled the matter later that morning and counsel said, "I did file a [written] 170.6 affidavit," respondent court did not deny that a 170.6 affidavit had been filed and instead said, "Yeah. It was denied. It's untimely. I started the hearing. I began to ask you specific questions about evidence, evidentiary questions, whether you had witnesses available, and so forth; so I began the process. It's untimely."

8

According to counsel's declaration, after petitioner had been remanded into custody and he advised the court that he would be filing a 170.6 motion, counsel states he "obtained a blank Code of Civil Procedure section 170.6 form from the clerk in Dept. N3. While in court, I filled out the form and affidavit and submitted it to the clerk."

Twice, counsel said he filed a 170.6 affidavit, and in neither instance did the court deny that a motion had been filed. Instead, the court repeated the peremptory challenge was denied because it was untimely. Had the court denied counsel's statement that a written 170.6 affidavit had been filed, it likely would have prompted a response from counsel to verify the written challenge had been filed, or an explanation from the court clerk who may have received the 170.6 affidavit, but not filed the affidavit because the court had already ruled the peremptory challenge was untimely.

Respondent court having waived counsel's defects in making the peremptory challenge, we find that petitioner is entitled to relief because at the time counsel made his peremptory challenges to the court, no hearing had commenced, and even if it had, respondent court made no determination of a contested fact relating to the merits of the proceeding. (§ 170.6, subd. (2).)

The procedural history and the context of the case is significant because it takes place while the Chief Justice's Emergency Statewide COVID-19 orders and the superior court's Implementation Orders were still in effect, and the docket indicates that petitioner's case had been shuttled between Departments N3, N4, N12, C44, and back to N3, where respondent court was sitting for the first time since petitioner's last appearance in Department N3 before Judge Lo.

After the parties made their appearances for the record on the morning of September 16th, the court asked counsel if he had documentation and witnesses. Counsel advised the court that he had "documentation," but there's no indication in the record that counsel provided the documents to the court, and thereafter counsel replied that his witnesses were unavailable that morning, which suggests that counsel had witnesses

9

available to testify at the hearing, but they were not present in court to testify that morning. As counsel explained in his declaration, the court was aware that "On the same morning, I had appeared before [respondent court] in Department N3 on a different matter which he had sent to Department N4 for a preliminary hearing."

After inquiring about the availability of witnesses, the court asked if there was a bail bondsman in the courtroom. When counsel replied, "No," the court said, "Well, unfortunately, I need the bail bondsman here in order to have documentation as to what that person believed the source of the bail bond was." Thereafter, counsel tried to explain to respondent court that he expected the case to be heard in Department 12 where the case had originally been scheduled to be heard that morning and said, "I was hoping—" but before counsel could complete his sentence, he was cut off by the court. Respondent court said this is now a Department 3 case, it's not going to Department 12, and the case is before the court for a Penal Code section 1275.1 hearing. Presumably it was at this point in the proceedings when petitioner realized respondent court intended to preside over the hearing. Immediately after the court announced the case would stay in Department 3, respondent court said, "I at this time lack confidence that you are going to be able to sustain your burden of evidence today." After expressing a doubt about petitioner's ability to prevail, the court exonerated petitioner's bond, remanded petitioner into custody, and set bail at $100,000. Immediately thereafter counsel said, "Your Honor, excuse me. I think I misunderstood the court's question" and then counsel advised the court that he could have witnesses and a bondsman in court at 1:30 p.m.

Excluding limitations not relevant in this case, subdivision (2) of section 170.6 states, "If the motion is directed to a hearing, other than the trial of a cause, the motion shall be made not later than the commencement of the hearing." The statute further provides that counsel is not precluded from making the peremptory challenge if the judge presiding at the hearing has "presided at, or acted in connection with . . . [a]

10

hearing, proceeding, or motion prior to trial, and not involving a determination of contested fact issues relating to the merits . . . ." (§ 170.6, subd. (2).)

On September 16th the matter was before respondent court for a pretrial hearing and a hearing pursuant to Penal Code section 1275.1. Section 1275.1 states that bail is not to be accepted unless the court finds that no portion of the consideration was feloniously obtained. Although petitioner had already been released from custody on bail, the purpose of the Penal Code section 1275.1 hearing before respondent court was to determine whether petitioner's bond should be exonerated and petitioner remanded into custody based on the felonious source of his bail. The statute states that release from custody "shall only be ordered by a magistrate or judge if any of the following occurs: [¶] (1) A peace officer . . . files a declaration executed under penalty of perjury setting forth probable cause to believe that the source of any consideration, pledge, security, deposit, or indemnification paid, given, made, or promised for its execution was feloniously obtained[;] [¶] (2) A prosecutor files a declaration executed under penalty of perjury setting forth probable cause to believe that the source of any consideration, pledge, security, deposit, or indemnification paid, given, made, or promised for its execution was feloniously obtained . . . . [¶] (3) The magistrate or judge has probable cause to believe that the source of any consideration, pledge, security, deposit, or indemnification paid, given, made, or promised for its execution was feloniously obtained." (Pen. Code, § 1275.1, subd. (b)(1)-(3).)

Although it is clear that respondent court called the case, it is less clear how respondent court could have conducted a hearing in this case with no evidence, or even the prospect of evidence to make the probable cause finding required in Penal Code section 1275.1. The docket in this case fails to indicate that a declaration from either a peace officer or a prosecutor had been filed with the court on or before the proceeding on September 16th. Likewise, there's no indication in the reporter's transcript that respondent court had before it a declaration from a peace officer, a prosecutor, or any

11

other source from which the court could have made a probable cause determination of the source of petitioner's bail. In fact, respondent court openly acknowledged after calling the case that the court was unable to proceed when the court said, "Well, unfortunately, I need the bail bondsman here in order to have documentation as to what that person believed the source of the bail bond was."

Nowhere in the docket or the reporter's transcript is it revealed that a bail bondsman, or any other witness materialized to provide the court with the necessary evidence to satisfy the probable cause requirement in the statute, which is required before the burden shifts to petitioner to demonstrate that no part of his bail was obtained by felonious means. (Pen. Code, § 1275.1(c).)

With no declarations, witnesses, and the court's acknowledgement that it needed a bail bondsman in order to proceed, the court was well aware that when it called the case on September 16th that it was incapable of proceeding with a hearing to determine the source of petitioner's bail. Furthermore, the court's assumption that petitioner would not "*be able to* sustain [his] burden" (emphasis added) at the upcoming hearing is further support that the hearing had not already commenced because the burden of demonstrating that the source of his bail had not been obtained by felonious means had not yet shifted to petitioner, and respondent court had already acknowledged that it was incapable of moving forward without a bail bondsman. Although the matter was before respondent court for a hearing, the record, and the court's acknowledgement that it could not proceed without a bail bondsman supports a finding that the Penal Code section 1275.1 hearing had not begun when counsel orally announced that he intended to file a peremptory challenge during the morning session.

Respondent court's explanation that petitioner's peremptory challenge was untimely because counsel "just appeared here," and because the court "just called the case," is unpersuasive because subdivision (2) of section 170.6 states, "the motion shall

12

be made not later than the commencement of the hearing," not when the court calls the case or when counsel make their appearance on the record.

Equally unconvincing is respondent court's explanation that petitioner's peremptory challenge was untimely because the court "began the process," the court "heard some proceedings," and because the court asked counsel specific questions about evidence and witness availability. None of the "proceedings" heard by the court or the questions asked were substantive that could have led to the determination of a contested fact, but rather they were preliminary questions that counsel would have felt obligated to answer as typical of a court's inquiry prior to a hearing to gauge the anticipated length of the hearing for the court's assessment of the logistics of where the hearing will take place. As is common in most calendar courts in the superior court, the calendar court may keep and preside over a case on its calendar, or assign the case to another courtroom, as the court did earlier that morning with counsel's preliminary hearing.

Even if the morning proceeding could be construed as a hearing, the record fails to identify the determination of a contested fact by respondent court, especially since the court had already acknowledge that it had no information about the source of petitioner's bail. If respondent court made no determination of a contested fact, then petitioner's peremptory challenge to the court after the morning break was not untimely and should have been accepted and granted by respondent court.

DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate the order entered on September 16, 2021, denying petitioner's peremptory challenge pursuant to section 170.6, and enter an order granting the peremptory challenge. In the interest of justice, the opinion in this matter is deemed final as to this court forthwith and the clerk is directed to issue the remittitur forthwith. (Cal. Rules of Court, rule 8.490(b)(2)(A).)

13